## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Wangs Alliance Corporation d/b/a WAC Lighting, | Civil Action No._____ |
| *Declaratory Judgment Plaintiff,* | |
| *v.* | **JURY TRIAL DEMAND** |
| Hinkley Lighting, Inc., | |
| *Declaratory Judgment Defendant.* | |

## COMPLAINT FOR DECLARATORY JUDGMENT

{11060100: }

Declaratory Judgment Plaintiff Wangs Alliance Corporation d/b/a WAC Lighting ("WAC"), by and through their undersigned counsel, file this Complaint against Declaratory Judgment Defendant Hinkley Lighting, Inc. ("Hinkley") seeking declaratory relief with respect to U.S. Patent Nos. 8,882,293 (the "'293 Patent") (Ex. 1); 8,794,788 (the "'788 Patent") (Ex. 2); 9,400,099 (the "'099 Patent") (Ex. 3); 9,651,237 (the "'237 Patent") (Ex. 4); and 9,810,420 (the "'420 Patent") (Ex. 5) (collectively referred to as the "Patents-in-Suit"). In support of this Complaint for Declaratory Judgment, WAC alleges as follows:

**INTRODUCTION**

1.      A family company, WAC is headquartered in the United States.  For over thirty-five years, WAC has operated in the United States at the forefront of emerging technologies, producing quality LED lighting solutions that are energy-efficient, long-lasting, and maintenance-free, and promoting green technology.

2.      Hinkley is WAC's competitor.

3.      Recently, Hinkley introduced several products that infringe a number of WAC's U.S. patents.

4.      WAC warned Hinkley of the infringement by sending Hinkley a cease and desist letter.  Hinkley refused to stop its infringing activity.  As a result, on the date of this Complaint, WAC initiated an investigation in the United States International Trade Commission ("ITC") seeking a determination of infringement by Hinkley of WAC's patents, an injunction of sales of the imported infringing Hinkley products and an exclusion from importation of those products.

5.      In response to WAC's warnings to Hinkley, on several occasions, in writing and verbally, Hinkley has asserted that several WAC products infringe Hinkley's Patents-in-Suit.

6.      In particular, in a December 22, 2022 email to WAC, Hinkley's counsel identified each of the Patents-in-Suit as impacting several of WAC's products.

7.      On January 6, 2023, Hinkley accused specific WAC products, namely Schonbek Quest (product number BPD40206), Schonbek Devotion (product number BPD66218), and Modern Forms Suspense (product numbers WS-W1911, WS-W1915, and WS-W1917) (together "the Accused Products"), of infringing each of the Patents-in-Suit.

8.      In a February 24, 2023 email to WAC, Hinkley's counsel again asserted that the Accused Products infringe each of the Patents-in-Suit.  Hinkley also attached claim charts to the email.

9.      Hinkley's assertion of the Patents-in-Suit against WAC is categorically without merit.

10.     As a result, in addition to bringing its own claims of infringement against Hinkley in the ITC, WAC brings this Complaint seeking a declaratory judgment that WAC does not infringe any claim of the Patents-in-Suit.

## **PARTIES**

11.     WAC is a corporation duly organized and existing under the laws of the state of New York with its principal place of business located at 44 Harbor Park Drive, Port Washington, New York 11050.

12.     Hinkley is an Ohio corporation with its principal place of business at 33000 Pin Oak Parkway, Avon Lake, Ohio 44012.

## **JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over WAC's request for a declaratory

judgment under 28 U.S.C. §§ 2201 and 2202. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., which are within the subject matter jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1338(a).

14.     Hinkley's numerous assertions that the Accused Products infringe the Patents-in-Suit, in writing (including claim charts) and verbally, over the course of severals months give rise to an actual and justiciable controversy between WAC and Hinkley as to the non-infringement of the Patents-in-Suit. Absent a declaration of non-infringement, Hinkley's continued wrongful assertions of infringement related to WAC products will cause WAC harm.

15.     Hinkley is subject to general and specific personal jurisdiction in this judicial district because it is incorporated under the laws of Ohio, its headquarters are located in this district, it operates its business out of this district, and it communicated its assertions of infringement by WAC of the Patents-in-Suit out of this district.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## COUNT ONE
## DECLARATION OF NON-INFRINGEMENT OF THE '293 PATENT

17.     WAC incorporates by reference its allegations contained in the foregoing paragraphs as though fully set forth herein.

18.     Upon information and belief, Hinkley is the owner of all legal rights, title and interests in the '293 Patent, including the right to enforce the '293 Patent.

19.     WAC has not infringed and does not infringe – directly or indirectly – any claim of the '293 Patent.

20.     Claims 1 through 11 of the '293 Patent include the following limitation: "a substrate formed at least in part of a dielectric material that supports at least one LED and a

plurality of contacts electrically connected to the at least one LED, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body." The Accused Products do not include, among other requirements of these claims, this limitation.

21.     Claim 12 of the '293 Patent includes the following limitation: "a substrate formed at least in part of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED, wherein a thermally-conductive surface is provided to the dielectric material that is to be placed in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body." The Accused Products do not include, among other requirements of these claims, this limitation.

22.     Claims 13 through 20 of the '293 Patent include the following limitation: "a substrate formed at least in part of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED and the wires extending through the base to which the body is coupled, wherein a thermally-conductive surface is provided to the dielectric material that is to be placed in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body." The Accused Products do not include, among other requirements of these claims, this limitation.

23.     Claims 21 through 25 of the '293 Patent include the following limitation: "a substrate formed at least in part of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive

coating or layer being in thermal communication with the heat transfer surface via an interface that provides intimate thermal contact therebetween to conduct heat generated by the at least one LED to the body."  The Accused Products do not include, among other requirements of these claims, this limitation.

24.  Hinkley is familiar with its '293 Patent.

25.  Hinkley understands the terms used in the '293 Patent.

26.  Hinkley understands the meaning of the term "electrically conductive" used in the '293 Patent.

27.  Hinkley understands the meaning of the term "dielectric material" used in the '293 Patent.

28.  Hinkley understands the meaning of the term "thermally-conductive coating or layer" used in the '293 Patent.

29.  As used in paragraphs 30-55, the terms "electrically conductive," "dielectric material," and "thermally-conductive coating or layer" are to be interpreted to have the same meaning as Hinkley understands these terms to have when they are used in the '293 Patent.

30.  Hinkley asserted in its claim charts that each of the Accused Products includes a substrate that supports at least one LED.

31.  The component in each Accused Product labeled in Hinkley's claim charts as "Substrate" ("Accused Substrate") includes aluminum.

32.  The Accused Substrate includes an electrically conductive material.

33.  The Accused Substrate includes a side coated with a dielectric material ("Front Side").

34.     No thermally-conductive coating or layer is provided to the Front Side of the Accused Substrate.

35.     In each Accused Product, at least one LED protrudes through the dielectric material which coats the Front Side.

36.     The Accused Substrate includes a side opposite the Front Side ("Back Side") which is made of aluminum.

37.     The Back Side of the Accused Substrate is electrically conductive.

38.     Aluminum is not a dielectric material.

39.     Aluminum is an electrically conductive material.

40.     An electrically conductive material is not a dielectric material.

41.     A dielectric material is not electrically conductive.

42.     No dielectric material is electrically conductive.

43.     The Back Side of the Accused Substrate does not include a dielectric material.

44.     One side of the Accused Substrate consists entirely of an electrically conductive material.

45.     The Back Side of the Accused Substrate is made of an electrically conductive material.

46.     One side of the Accused Substrate does not include any dielectric material.

47.     The Back Side of the Accused Substrate does not include any dielectric material.

48.     Hinkley asserted in its claim charts that in each of the Accused Products a thermally-conductive coating or layer is provided to one side of the Accused Substrate.

49.     Hinkley asserted in its claim charts that in each of the Accused Products thermally-conductive coating or layer is provided to the Back Side of the Accused Substrate.

50.     The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided does not include a dielectric material.

51.     The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is electrically conductive.

52.     The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is made of aluminum.

53.     A thermally-conductive coating or layer is not provided to a dielectric material surface of the Accused Substrate.

54.     A thermally-conductive coating or layer is not applied to a dielectric material surface of the Accused Substrate.

55.     A thermally-conductive coating or layer does not touch a dielectric material surface of the Accused Substrate.

56.     These allegations give rise to an actual and justiciable controversy between WAC and Hinkley as to the non-infringement of the '293 Patent.

57.     WAC seeks and is entitled to a declaration of non-infringement of the '293 Patent pursuant to Title 35 of the United States Code.

## COUNT TWO
## DECLARATION OF NON-INFRINGEMENT OF THE '788 PATENT

58.     WAC incorporates by reference its allegations contained in the foregoing paragraphs as though fully set forth herein.

59.     Upon information and belief, Hinkley is the owner of all legal rights, title and

interests in the '788 Patent, including the right to enforce the '788 Patent.

60.     WAC has not infringed and does not infringe – directly or indirectly – any claim of the '788 Patent.

61.     Claims 1 through 11 of the '788 Patent include the following limitation: "a substrate formed at least in part of a dielectric material that supports an LED array comprising a plurality of light emitting diodes and a plurality of contacts electrically connected to the LED array, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface to conduct heat generated by the LEDs to the body."  The Accused Products do not include, among other requirements of these claims, this limitation.

62.     Claim 12 of the '788 Patent includes the following limitation: "a substrate formed at least in part of a dielectric material that supports an LED array comprising a plurality of light emitting diodes and a plurality of contacts electrically connected to the LED array, wherein a thermally-conductive surface is provided to the dielectric material that is to be placed in thermal communication with the heat transfer surface to conduct heat generated by the LEDs to the body." The Accused Products do not include, among other requirements of these claims, this limitation.

63.     Claims 13 through 20 of the '788 Patent include the following limitation: "a substrate formed at least in part of a dielectric material that supports an LED array comprising a plurality of light emitting diodes and a plurality of contacts electrically connected to the LED array and the wires extending through the base to which the body is coupled, wherein a thermally-conductive planar surface is provided to the dielectric material that is to be placed in thermal communication with the heat transfer surface to conduct heat generated by the LEDs to the body."

The Accused Products do not include, among other requirements of these claims, this limitation.

64. Claims 21 through 30 of the '788 Patent include the following limitation: "a substrate formed at least in part of a dielectric material that supports an LED array comprising a plurality of light emitting diodes and a plurality of contacts electrically connected to the LED array, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface via an interface that provides intimate thermal contact therebetween to conduct heat generated by the LEDs to the body." The Accused Products do not include, among other requirements of these claims, this limitation.

65. Hinkley is familiar with its '788 Patent.

66. Hinkley understands the terms used in the '788 Patent.

67. Hinkley understands the meaning of the term "electrically conductive" used in the '788 Patent.

68. Hinkley understands the meaning of the term "dielectric material" used in the '788 Patent.

69. Hinkley understands the meaning of the term "thermally-conductive coating or layer" used in the '788 Patent.

70. As used in paragraphs 71-96, the terms "electrically conductive," "dielectric material," and "thermally-conductive coating or layer" are to be interpreted to have the same meaning as Hinkley understands these terms to have when they are used in the '788 Patent.

71. Hinkley asserted in its claim charts that each of the Accused Products includes a substrate that supports at least one LED.

72.     The component in each Accused Product labeled in Hinkley's claim charts as "Substrate" ("Accused Substrate") includes aluminum.

73.     The Accused Substrate includes an electrically conductive material.

74.     The Accused Substrate includes a side coated with a dielectric material ("Front Side").

75.     No thermally-conductive coating or layer is provided to the Front Side of the Accused Substrate.

76.     In each Accused Product, at least one LED protrudes through the dielectric material which coats the Front Side.

77.     The Accused Substrate includes a side opposite the Front Side ("Back Side") which is made of aluminum.

78.     The Back Side of the Accused Substrate is electrically conductive.

79.     Aluminum is not a dielectric material.

80.     Aluminum is an electrically conductive material.

81.     An electrically conductive material is not a dielectric material.

82.     A dielectric material is not electrically conductive.

83.     No dielectric material is electrically conductive.

84.     The Back Side of the Accused Substrate does not include a dielectric material.

85.     One side of the Accused Substrate consists entirely of an electrically conductive material.

86.     The Back Side of the Accused Substrate is made of an electrically conductive material.

87.     One side of the Accused Substrate does not include any dielectric material.

88.     The Back Side of the Accused Substrate does not include any dielectric material.

89.     Hinkley asserted in its claim charts that in each of the Accused Products a thermally-conductive coating or layer is provided to one side of the Accused Substrate.

90.     Hinkley asserted in its claim charts that in each of the Accused Products thermally-conductive coating or layer is provided to the Back Side of the Accused Substrate.

91.     The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided does not include a dielectric material.

92.     The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is electrically conductive.

93.     The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is made of aluminum.

94.     A thermally-conductive coating or layer is not provided to a dielectric material surface of the Accused Substrate.

95.     A thermally-conductive coating or layer is not applied to a dielectric material surface of the Accused Substrate.

96.     A thermally-conductive coating or layer does not touch a dielectric material surface of the Accused Substrate.

97.     These allegations give rise to an actual and justiciable controversy between WAC and Hinkley as to the non-infringement of the '788 Patent.

98.     WAC seeks and is entitled to a declaration of non-infringement of the '788 Patent

pursuant to Title 35 of the United States Code.

<u>**COUNT THREE**</u>
**DECLARATION OF NON-INFRINGEMENT OF THE '099 PATENT**

99.     WAC incorporates by reference its allegations contained in the foregoing paragraphs as though fully set forth herein.

100.     Upon information and belief, Hinkley is the owner of all legal rights, title and interests in the '099 Patent, including the right to enforce the '099 Patent.

101.     WAC has not infringed and does not infringe – directly or indirectly – any claim of the '099 Patent.

102.     Claims 1 through 12 of the '099 Patent include the following limitation: "a substrate formed at least in part of a dielectric material that supports at least one LED, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body."  The Accused Products do not include, among other requirements of these claims, this limitation.

103.     Claim 13 of the '099 Patent includes the following limitation: "a substrate formed at least in part of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED, wherein a thermally-conductive surface is provided to the dielectric material, said thermally-conductive surface being configured to conduct heat generated by the at least one LED to the body when placed in thermal communication with said heat transfer surface."  The Accused Products do not include, among other requirements of these claims, this limitation.

104.     Claims 14 through 20 of the '099 Patent include the following limitation: "a

substrate formed at least in part of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED and to wires for delivering electrical energy to the at least one LED, wherein a thermally-conductive surface is provided to the dielectric material that is to be placed in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body." The Accused Products do not include, among other requirements of these claims, this limitation.

105.    Claims 21 through 25 of the '099 Patent include the following limitation: "a substrate formed at least in part of a dielectric material that supports at least one LED, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface via an interface that provides intimate thermal contact therebetween to conduct heat generated by the at least one LED to the body." The Accused Products do not include, among other requirements of these claims, this limitation.

106.    Hinkley is familiar with its '099 Patent.

107.    Hinkley understands the terms used in the '099 Patent.

108.    Hinkley understands the meaning of the term "electrically conductive" used in the '099 Patent.

109.    Hinkley understands the meaning of the term "dielectric material" used in the '099 Patent.

110.    Hinkley understands the meaning of the term "thermally-conductive coating or layer" used in the '099 Patent.

111.    As used in paragraphs 112-137, the terms "electrically conductive," "dielectric

material," and "thermally-conductive coating or layer" are to be interpreted to have the same meaning as Hinkley understands these terms to have when they are used in the '099 Patent.

112.    Hinkley asserted in its claim charts that each of the Accused Products includes a substrate that supports at least one LED.

113.    The component in each Accused Product labeled in Hinkley's claim charts as "Substrate" ("Accused Substrate") includes aluminum.

114.    The Accused Substrate includes an electrically conductive material.

115.    The Accused Substrate includes a side coated with a dielectric material ("Front Side").

116.    No thermally-conductive coating or layer is provided to the Front Side of the Accused Substrate.

117.    In each Accused Product, at least one LED protrudes through the dielectric material which coats the Front Side.

118.    The Accused Substrate includes a side opposite the Front Side ("Back Side") which is made of aluminum.

119.    The Back Side of the Accused Substrate is electrically conductive.

120.    Aluminum is not a dielectric material.

121.    Aluminum is an electrically conductive material.

122.    An electrically conductive material is not a dielectric material.

123.    A dielectric material is not electrically conductive.

124.    No dielectric material is electrically conductive.

125.    The Back Side of the Accused Substrate does not include a dielectric material.

126.    One side of the Accused Substrate consists entirely of an electrically conductive material.

127.    The Back Side of the Accused Substrate is made of an electrically conductive material.

128.    One side of the Accused Substrate does not include any dielectric material.

129.    The Back Side of the Accused Substrate does not include any dielectric material.

130.    Hinkley asserted in its claim charts that in each of the Accused Products a thermally-conductive coating or layer is provided to one side of the Accused Substrate.

131.    Hinkley asserted in its claim charts that in each of the Accused Products thermally-conductive coating or layer is provided to the Back Side of the Accused Substrate.

132.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided does not include a dielectric material.

133.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is electrically conductive.

134.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is made of aluminum.

135.    A thermally-conductive coating or layer is not provided to a dielectric material surface of the Accused Substrate.

136.    A thermally-conductive coating or layer is not applied to a dielectric material surface of the Accused Substrate.

137.    A thermally-conductive coating or layer does not touch a dielectric material

surface of the Accused Substrate.

138.    These allegations give rise to an actual and justiciable controversy between WAC and Hinkley as to the non-infringement of the '099 Patent.

139.    WAC seeks and is entitled to a declaration of non-infringement of the '099 Patent pursuant to Title 35 of the United States Code.

**COUNT FOUR**
**DECLARATION OF NON-INFRINGEMENT OF THE '237 PATENT**

140.    WAC incorporates by reference its allegations contained in the foregoing paragraphs as though fully set forth herein.

141.    Upon information and belief, Hinkley is the owner of all legal rights, title and interests in the '237 Patent, including the right to enforce the '237 Patent.

142.    WAC has not infringed and does not infringe – directly or indirectly – any claim of the '237 Patent.

143.    Claims 1 through 12 of the '237 Patent include the following limitation: "a substrate formed of a dielectric material that supports at least one LED, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body."  The Accused Products do not include, among other requirements of these claims, this limitation.

144.    Claim 13 of the '237 Patent includes the following limitation: "a substrate formed of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED, wherein a thermally-conductive surface is provided to the dielectric material, said thermally-conductive surface being configured to conduct heat generated

by the at least one LED to the body when placed in thermal communication with said heat transfer surface."  The Accused Products do not include, among other requirements of these claims, this limitation.

145.    Claims 14 through 20 of the '237 Patent include the following limitation: "a substrate formed of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED and to wires for delivering electrical energy to the at least one LED, wherein a thermally-conductive surface is provided to the dielectric material that is to be placed in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body."  The Accused Products do not include, among other requirements of these claims, this limitation.

146.    Claims 21 through 25 of the '237 Patent include the following limitation: "a substrate formed of a dielectric material that supports at least one LED, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface via an interface that provides intimate thermal contact therebetween to conduct heat generated by the at least one LED to the body."  The Accused Products do not include, among other requirements of these claims, this limitation.

147.    Hinkley is familiar with its '237 Patent.

148.    Hinkley understands the terms used in the '237 Patent.

149.    Hinkley understands the meaning of the term "electrically conductive" used in the '237 Patent.

150.    Hinkley understands the meaning of the term "dielectric material" used in the '237

Patent.

151.    Hinkley understands the meaning of the term "thermally-conductive coating or layer" used in the '237 Patent.

152.    As used in paragraphs 153-178, the terms "electrically conductive," "dielectric material," and "thermally-conductive coating or layer" are to be interpreted to have the same meaning as Hinkley understands these terms to have when they are used in the '237 Patent.

153.    Hinkley asserted in its claim charts that each of the Accused Products includes a substrate that supports at least one LED.

154.    The component in each Accused Product labeled in Hinkley's claim charts as "Substrate" ("Accused Substrate") includes aluminum.

155.    The Accused Substrate includes an electrically conductive material.

156.    The Accused Substrate includes a side coated with a dielectric material ("Front Side").

157.    No thermally-conductive coating or layer is provided to the Front Side of the Accused Substrate.

158.    In each Accused Product, at least one LED protrudes through the dielectric material which coats the Front Side.

159.    The Accused Substrate includes a side opposite the Front Side ("Back Side") which is made of aluminum.

160.    The Back Side of the Accused Substrate is electrically conductive.

161.    Aluminum is not a dielectric material.

162.    Aluminum is an electrically conductive material.

163.    An electrically conductive material is not a dielectric material.

164.    A dielectric material is not electrically conductive.

165.    No dielectric material is electrically conductive.

166.    The Back Side of the Accused Substrate does not include a dielectric material.

167.    One side of the Accused Substrate consists entirely of an electrically conductive material.

168.    The Back Side of the Accused Substrate is made of an electrically conductive material.

169.    One side of the Accused Substrate does not include any dielectric material.

170.    The Back Side of the Accused Substrate does not include any dielectric material.

171.    Hinkley asserted in its claim charts that in each of the Accused Products a thermally-conductive coating or layer is provided to one side of the Accused Substrate.

172.    Hinkley asserted in its claim charts that in each of the Accused Products thermally-conductive coating or layer is provided to the Back Side of the Accused Substrate.

173.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided does not include a dielectric material.

174.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is electrically conductive.

175.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is made of aluminum.

176. A thermally-conductive coating or layer is not provided to a dielectric material surface of the Accused Substrate.

177. A thermally-conductive coating or layer is not applied to a dielectric material surface of the Accused Substrate.

178. A thermally-conductive coating or layer does not touch a dielectric material surface of the Accused Substrate.

179. These allegations give rise to an actual and justiciable controversy between WAC and Hinkley as to the non-infringement of the '237 Patent.

180. WAC seeks and is entitled to a declaration of non-infringement of the '237 Patent pursuant to Title 35 of the United States Code.

<u>COUNT FIVE</u>
**DECLARATION OF NON-INFRINGEMENT OF THE '420 PATENT**

181. WAC incorporates by reference its allegations contained in the foregoing paragraphs as though fully set forth herein.

182. Upon information and belief, Hinkley is the owner of all legal rights, title and interests in the '420 Patent, including the right to enforce the '420 Patent.

183. WAC has not infringed and does not infringe – directly or indirectly – any claim of the '420 Patent.

184. Claims 1 through 12 of the '420 Patent include the following limitation: "a substrate formed of a dielectric material that supports at least one LED, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body." The Accused Products do not include, among

other requirements of these claims, this limitation.

185.    Claim 13 of the '420 Patent includes the following limitation: "a substrate formed of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED, wherein a thermally-conductive surface is provided to the dielectric material."  The Accused Products do not include, among other requirements of these claims, this limitation.

186.    Claims 14 through 20 of the '420 Patent include the following limitation: "a substrate formed of a dielectric material that supports at least one LED and a plurality of contacts electrically connected to the at least one LED, wherein a thermally-conductive surface is provided to the dielectric material that is to be placed in thermal communication with the heat transfer surface to conduct heat generated by the at least one LED to the body."  The Accused Products do not include, among other requirements of these claims, this limitation.

187.    In particular, Claims 21 through 25 of the '420 Patent include the following limitation: "a substrate formed of a dielectric material that supports at least one LED, wherein a thermally-conductive coating or layer is provided to the dielectric material, said thermally-conductive coating or layer being in thermal communication with the heat transfer surface via an interface that provides intimate thermal contact therebetween to conduct heat generated by the at least one LED to the body."  The Accused Products do not include, among other requirements of these claims, this limitation.

188.    Hinkley is familiar with its '420 Patent.

189.    Hinkley understands the terms used in the '420 Patent.

190.    Hinkley understands the meaning of the term "electrically conductive" used in the

'420 Patent.

191.    Hinkley understands the meaning of the term "dielectric material" used in the '420 Patent.

192.    Hinkley understands the meaning of the term "thermally-conductive coating or layer" used in the '420 Patent.

193.    As used in paragraphs 194-219 the terms "electrically conductive," "dielectric material," and "thermally-conductive coating or layer" are to be interpreted to have the same meaning as Hinkley understands these terms to have when they are used in the '420 Patent.

194.    Hinkley asserted in its claim charts that each of the Accused Products includes a substrate that supports at least one LED.

195.    The component in each Accused Product labeled in Hinkley's claim charts as "Substrate" ("Accused Substrate") includes aluminum.

196.    The Accused Substrate includes an electrically conductive material.

197.    The Accused Substrate includes a side coated with a dielectric material ("Front Side").

198.    No thermally-conductive coating or layer is provided to the Front Side of the Accused Substrate.

199.    In each Accused Product, at least one LED protrudes through the dielectric material which coats the Front Side.

200.    The Accused Substrate includes a side opposite the Front Side ("Back Side") which is made of aluminum.

201.    The Back Side of the Accused Substrate is electrically conductive.

202.    Aluminum is not a dielectric material.

203.    Aluminum is an electrically conductive material.

204.    An electrically conductive material is not a dielectric material.

205.    A dielectric material is not electrically conductive.

206.    No dielectric material is electrically conductive.

207.    The Back Side of the Accused Substrate does not include a dielectric material.

208.    One side of the Accused Substrate consists entirely of an electrically conductive material.

209.    The Back Side of the Accused Substrate is made of an electrically conductive material.

210.    One side of the Accused Substrate does not include any dielectric material.

211.    The Back Side of the Accused Substrate does not include any dielectric material.

212.    Hinkley asserted in its claim charts that in each of the Accused Products a thermally-conductive coating or layer is provided to one side of the Accused Substrate.

213.    Hinkley asserted in its claim charts that in each of the Accused Products thermally-conductive coating or layer is provided to the Back Side of the Accused Substrate.

214.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided does not include a dielectric material.

215.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is electrically conductive.

216.    The side of the Accused Substrate to which Hinkley asserts in its claim charts a thermally-conductive coating or layer is provided is made of aluminum.

217.    A thermally-conductive coating or layer is not provided to a dielectric material surface of the Accused Substrate.

218.    A thermally-conductive coating or layer is not applied to a dielectric material surface of the Accused Substrate.

219.    A thermally-conductive coating or layer does not touch a dielectric material surface of the Accused Substrate.

220.    These allegations give rise to an actual and justiciable controversy between WAC and Hinkley as to the non-infringement of the '420 Patent.

221.    WAC seeks and is entitled to a declaration of non-infringement of the '420 Patent pursuant to Title 35 of the United States Code.

## PRAYER FOR RELIEF

WHEREFORE, WAC prays:

A.  That this Court find and declare that WAC does not infringe and has not infringed, in any manner, the Patents-in-Suit pursuant to Title 35 of the United States Code;

B.  That this Court award WAC all of its costs of this action;

C.  That this Court find that this is an exceptional case and award WAC its attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise; and

D.  That this Court grant WAC such other and further relief as the Court deems just and proper.

**JURY DEMAND**

WAC demands a trial by jury on all issues so triable.


Dated: March 10, 2023                          Respectfully submitted,

                                               */s/* David B. Cupar
                                               David B. Cupar
                                               **McDonald Hopkins - Cleveland**
                                               Ste. 2100
                                               600 Superior Avenue, E
                                               Cleveland, OH 44114
                                               Tel: 216-348-5400
                                               Fax: 216-348-5474
                                               dcupar@mcdonaldhopkins.com

                                               David C. Radulescu (*pro hac vice* forthcoming)
                                               Etai Lahav (*pro hac vice* forthcoming)
                                               Jonathan Auerbach (*pro hac vice* forthcoming)
                                               **RADULESCU LLP**
                                               5 Penn Plaza, 19th Floor
                                               New York, NY 10001
                                               Tel.: (646) 502-5950
                                               Fax: (646) 502-5959
                                               david@radip.com
                                               etai@radip.com
                                               jonathan@radip.com

                                               ***Attorneys for Declaratory Judgment Plaintiff***
                                               ***Wangs Alliance Corporation***